IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 10-cv-03140-WDM-BNB

NATHAN ANDREW LAIDLEY,
on his own behalf and on behalf of a class of others similarly situated,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER,
a Colorado municipal corporation,

      Defendant.

---

## ORDER ON MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

---

Miller, J.

This case is before me on the Motion to Dismiss, or in the Alternative, for Summary

Judgment, filed January 31, 2011, by defendant City and County of Denver (Denver) (ECF

No. 9). In an Order issued May 11, 2011, I notified the parties that I would treat the motion,

to the extent it is filed under Fed. R. Civ. P. 12(b)(6), as one for summary judgment under

Rule 56. I provided them with the opportunity to tender additional materials pertinent to the

motion, and they have complied with my directions, more or less.[1]  I have reviewed the

---

[1]      On May 16, 2011, Plaintiff responded to my May 11 order by informing me
he has no objection to my consideration of evidence of his guilty plea to driving without
a license "as if such had been pled in the complaint."  Response at ¶ 1 (ECF No. 22).
Plaintiff states his understanding (or that of counsel) that the guilty plea is the only
"extra-complaint" evidence to be considered in resolving the motion to dismiss or for
summary judgment. *Id.*
      On May 20, 2011, Denver filed a supplement to its motion to dismiss or for
summary judgment, adding no factual evidence for my consideration but notifying me of
additional legal authority in support of its motion.
      I conclude I may now address the merits of the parties' arguments.  I note that, in
addition to the evidence of Plaintiff's guilty plea attached to the Motion to Dismiss,

parties' arguments and the evidence tendered, and find that oral argument is not necessary to my resolution of the motion.  For the reasons that follow, I will deny the motion to dismiss for lack of subject matter jurisdiction and grant the motion for summary judgment.

<u>Background</u>[2]

Plaintiff Nathan Laidley (Laidley), individually and on behalf of a proposed class, challenges the application of a Denver municipal ordinance authorizing impoundment of a motor vehicle when a driver is found to be without a valid driver's license.

On December 2, 2010, Laidley was driving his 2002 Chevrolet Cavalier on East Colfax Avenue when he was stopped by a Denver police officer, purportedly because one of his brake lights was not functioning.  The police officer cited Laidley for driving without a valid driver's license and seized his car pursuant to Denver Revised Municipal Code, section 54-811(10) (Impoundment Ordinance).  Laidley later pleaded guilty to driving without a valid driver's license, a violation of  C.R.S. § 42-2-101(1).

Laidley challenges the validity of two sections of the Denver Revised Municipal Code.  Section 54-811, the "Impoundment Ordinance," provides in relevant part:

---

Denver has also provided excerpts of the Denver Police Department Operations Manual pertaining to policies for impoundment of vehicles.  Although this evidence was provided only in Denver's reply brief, and although my May 11 order did not reference those excerpts, they were of record at the time, and Plaintiff was given the opportunity to present any materials he deemed pertinent to my resolution to the motion.  Plaintiff neither provided such materials nor sought leave to file a surreply to address the excerpts.  Thus, to the extent I will treat the motion to dismiss pursuant to Rule 12(b)(6) as one for summary judgment, I will consider the complaint, Plaintiff's guilty plea, and the tendered excerpts of the Police Department Manual.

[2]       The facts are drawn from the Class Action Complaint (ECF No. 1) and from the Statement of Undisputed Facts in the Proposed Scheduling Order tendered by the parties on March 4, 2011 (ECF No. 18).

Sec. 54-811.  Authority for Impoundment; vehicles deemed obstructions to traffic or public nuisances.  The chief of police, the undersheriff and the manager of public works, and their respective designees, are hereby authorized to remove, or have removed at their direction, a vehicle or automobile junker from any public or private way or place, under any of the circumstances hereinafter enumerated, the council hereby finding and determining such circumstances to be obstructions to traffic or public nuisances . . .

> (10) When the driver of a vehicle is driving without an operator's license . . . which is current and valid, or when the driver does not have such license in the driver's immediate possession, or when the driver drives a vehicle contrary to restrictions imposed upon the license, or when the driver drives the vehicle while their operator's . . . license has been denied, suspended, canceled or revoked by the state . . .

Section 54-813, the "Costs Ordinance," provides:

Sec. 54-813.  Costs.
(c) Except as provided in subsection (d) of this section, the release of a motor vehicle impounded as provided in subsection 54-811(10) . . . shall require that a $2,500.00 bond be posted within thirty (30) days of impoundment in favor of the City and County of Denver and a $75.00 bond fee be paid, or the motor vehicle is subject to disposal by the city by auction or otherwise.  This requirement is not applied when the operator of such vehicle is found to have had a valid driver's license with such vehicle being released upon payment of towing and impoundment charges by owner.  This bond shall be held for a period of one (1) year and forfeited if such vehicle is operated by an unlicensed driver in Colorado within that time.  For this section, a $100.00 impoundment land acquisition fee shall be paid to the city prior to the release of vehicle.

Complaint, ¶ 3 (ECF No. 1).

In his Complaint, Laidley alleges that the seizure and impoundment of his vehicle–and of vehicles belonging to members of the proposed class–violates his rights under the Fourth, Fifth, and Fourteenth Amendments.[3]  As fleshed out by the parties' arguments in connection with the motion to dismiss, Laidley claims that the Impoundment

---

[3]     In his response to the motion to dismiss or for summary judgment, Laidley abandons his Fifth Amendment claim.

Ordinance and Costs Ordinance are null and void and thus the seizure was unreasonable in violation of the Fourth Amendment and a deprivation of property without substantive due process in violation of the Fourteenth Amendment. He seeks damages, an injunction, and class certification.

Denver moves to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and, as construed by my May 11, 2011 order, for summary judgment pursuant to Fed. R. Civ. P. 56.

Discussion

1.    Rule 12(b)(1) Motion:  Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction." *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994). Where, as here, the parties are not of diverse citizenship, Laidley must invoke jurisdiction arising under a law of the United States. To withstand a Rule 12(b)(1) motion to dismiss, Laidley's complaint "must identify the statutory or constitutional provision under which the claim arises, and allege sufficient facts to show that the case is one arising under federal law." *Martinez v. U.S. Olympic Comm.*, 802 F.2d 1275, 1280 (10th Cir. 1986). *See also Morris*, 39 F.3d at 1111 ("A case arises under federal law if its 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law'") (citation omitted). Laidley, the party invoking federal jurisdiction, bears the burden of proof. *Sac & Fox Nation of Oklahoma v. Cuomo*, 193 F.3d 1162, 1165 (10th Cir. 1999).

Denver interprets Laidley's argument that the Impoundment Ordinance and Costs Ordinance are invalid because the City lacked authority to enact them as an assertion that

4

Denver violated state law when it impounded his vehicle.  Based on this interpretation, it argues there is no federal question presented because violations of state or local law are not actionable under section 1983.[4]  *See Rector v. City and County of Denver*,  348 F.3d 935, 947 (10th Cir. 2003) ("It is well established, however, that a state's violation of its own laws does not create a claim under § 1983").  *See also Davis v. Sherer*, 468 U.S. 183, 194-196 (1984) (rejecting argument that section 1983 liability may be premised exclusively on violation of state law).

I do not view Laidley's complaint so narrowly.  Under the standard of review set forth above, it is clear that Laidley has invoked this court's federal question jurisdiction.  The Complaint expressly states that the case is brought under 42 U.S.C. § 1983.  Laidley alleges that Denver, acting under color of its Impoundment and Costs Ordinances, unreasonably seized and impounded his vehicle in violation of his rights under the Fourth and Fourteenth Amendments.  As I interpret the Complaint, I do not construe Laidley's claims to be that the seizure of his vehicle was in violation of state or municipal law.  Rather, the crux of Laidley's claim is that Denver lacked authority under Colorado law to enact the Impoundment and Costs Ordinances and, therefore, because it acted on the basis of an invalid ordinance, the seizure of his vehicle was unreasonable and a violation of substantive due process.  On their face, these allegations show that the case arises

---

[4]     Denver's arguments on the issue of whether a federal question is presented are somewhat confusing.  Although the motion to dismiss cites Rule 12(b)(1) as a basis for the relief requested, Denver does not clearly argue that I am without subject matter jurisdiction to consider the merits of Laidley's claims.  The cases Denver relies upon, cited in the text, address the question of whether a claim may be created or maintained under section 1983, but their discussions are in the context of judging the merits of the claims and not of addressing a threshold jurisdictional matter.

under section 1983.  I will address the merits of Laidley's claims.

2.      Motion for Summary Judgment:  Validity of Municipal Ordinances

I preface my discussion of the parties' remaining arguments with a discussion of the standard of review for a motion for summary judgment pursuant to Rule 56.  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, 477 *U.S.* 242, 248 (1986).  I construe all facts and make reasonable inferences in the light most favorable to Laidley, the nonmoving party.  *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002).  In this case, because the parties do not dispute any of the relevant facts, my resolution of the motion will turn on the legal issues presented.

A.      Denver's Authority to Enact Municipal Ordinances, Generally

Laidley's complaint challenges the validity of two separate ordinances, the Impoundment Ordinance and the Costs Ordinance, quoted above.  He argues that Denver lacked authority to enact the ordinances under Colorado law.

Denver is a home-rule city existing pursuant to Article XX of the Colorado Constitution.  In determining whether a home-rule city or the state–or both–has authority to legislate in an area, the Colorado Supreme Court has recognized three categories of regulatory matters:  "(1) matters of local concern; (2) matters of statewide concern; and (3) matters of mixed state and local concern."  *City of Commerce City v. State*, 40 P.3d 1273, 1279 (Colo. 2002).  The balance between these areas is as follows:

Both home-rule cities and the state may legislate in areas of local concern;

6

> however, if a home-rule ordinance or charter conflicts with a state statute regulating a local matter, the home-rule provision supersedes the conflicting state provision. Conversely, with regard to matters of statewide concern, the state legislature has supreme authority and home-rule cities have no power to act unless authorized by the constitution or by state statute. Finally, in matters of mixed state and local concern, both home-rule cities and the state legislature may adopt legislation; however, in the event of a conflict between the two, the state statute supersedes a conflicting provision of the home-rule charter or ordinance.

*Id.* (citations omitted).

Determination of which category a matter falls into is made on an *ad hoc* basis. *Id.* at 1280. Factors that may be relevant to the determination include:

> (1) the need for statewide uniformity of regulation; (2) the impact of municipal regulation on persons living outside the municipal limits; (3) historical considerations, specifically whether the matter is one traditionally governed by state or by local government; and (4) whether the Colorado Constitution specifically commits the matter to state or local regulation.

*Id.* I will consider these factors with regard to each of the ordinances at issue.

B.    Validity of Impoundment Ordinance

The Impoundment Ordinance authorizes law enforcement officers in Denver to remove and impound vehicles under certain enumerated circumstances, including where the operator of the vehicle is found to be without a valid driver's license.

Unlike the regulation of automated vehicle identification systems in *Commerce City*, I do not find there is a need for statewide uniformity of regulation over the authorization of the local police to impound vehicles that obstruct traffic or create a public nuisance. Traffic and parking conditions differ among municipalities. Given the amount of traffic and the lack of available street parking in many areas of Denver, impoundment, rather than merely parking a vehicle that was operated by a driver without a license until it may legally be removed, may be the preferred option. The Impoundment Ordinance itself contains a

finding that the circumstances enumerated in the ordinance create "obstructions to traffic or public nuisances." *See* § 54-811. As opposed to smaller cities and towns, Denver may not have available temporary parking space. This factor suggests the Impoundment Ordinance governs a merely local matter.

The Impoundment Ordinance will affect persons living outside of Denver, should they be stopped within city limits and be found to lack a valid driver's license. Although I have no statistics before me on how great this impact on nonresidents might be, this factor weighs in favor of a more statewide interest.

With regard to whether matters are traditionally governed by state or local government, the Colorado Supreme Court has recognized that Denver has "an interest in regulating traffic on [its] local streets and assuring that those streets are safe for [its] citizens." *City of Commerce City v. State*, 40 P.3d at 1284. That interest encompasses the goal of keeping its streets clear of vehicles that, for whatever reason, cannot be driven. This factor supports a finding of local interest.

The final factor, whether the Colorado Constitution specifically commits the impoundment of vehicles to state or local regulation, does not weigh in favor of either side. Section 6 of Article XX of the state constitution identifies eight areas for local governance, but city traffic generally and impoundment of vehicles specifically are not among the enumerated concerns.

Although several Colorado cases have considered whether various traffic issues are of local or general concern, none determine the proper category for an impoundment ordinance such as the one before me. *See City of Commerce City v. State*, 40 P.3d at 1284 (regulation of automated vehicle identification systems as a method of traffic

enforcement was issue of mixed state and local concerns); *City of Greenwood Village ex. rel. State v. Fleming*, 643 P.2d 511 (Colo. 1982) (city could not establish civil system for adjudicating traffic offenses); *People v. Hizhniak*, 195 Colo. 427, 429, 579 P.2d 1131, 1132 (1978) (regulation of traffic speeds on city streets is matter of local concern); *Davis v. City and County of Denver*, 342 P.2d, 674, 679 (Colo. 1959) (authority to punish operator of vehicle who drives without a license was pre-empted by state); *City and County of Denver v. Henry*, 95 Colo. 582, 588, 38 P.2d 895, 898 (1934) (traffic regulations at municipal street intersections are local matters). *Cf. City of Colorado Springs v. Smartt*, 620 P.2d 1060 (Colo. 1980) (city did not abuse its discretion in basing rezoning decision to further legitimate objective of lessening traffic congestion and facilitating transportation).

In support of his contention that Denver lacked authority to enact the Impoundment Ordinance, Laidley relies on the Colorado Supreme Court's decision in *Davis v. City and County of Denver*. In that case, plaintiffs were charged with violating a section of the Denver Municipal Code that, at the time, punished the driving of a motor vehicle while the operator's license had been suspended or revoked. 342 P.2d at 675. The municipal code sections in question prohibited driving without a valid license and authorized penalties of a fine not to exceed $300 and imprisonment not to exceed 90 days.[5] At the time of plaintiffs' conduct, the State of Colorado had a statute prohibiting driving a motor vehicle while the operator's license was suspended or revoked. Punishment under the statute included imprisonment of up to six months, a fine of between $50 and $500, or both. *Id.* at 675-76.

---

[5]     Despite the availability of criminal penalties, the *Davis* opinion makes clear that the plaintiffs were charged in civil, rather than criminal, actions. 342 P.2d at 675.

Plaintiffs in *Davis* sought reversal of the judgments against them, arguing the municipal ordinance was void.  The Colorado Supreme Court agreed.  The court began its analysis by addressing Denver's authority as a home-rule city, distinguishing between local and municipal matters, where Denver has exclusive power to legislate, and matters of general interest, where Denver "can exercise authority only with the consent of the State." *Id.* at 676.  The court observed that Denver could constitutionally punish conduct that was also an offense under state law only so long as the state's grant of authority to do so was "manifest and unmistakable."  *Id.* at 677 (citation omitted).  On the record before it, the *Davis* court held Denver "lacked jurisdiction or authority" to enact the municipal ordinance at issue because no state statute had delegated authority to Denver to punish the operator of a motor vehicle who drove without a license.[6]  *Id.* at 679.

Laidley asserts that *Davis* is controlling.   He contends that, in enacting the impoundment ordinance, Denver "has attempted to elevate itself to a par with the Colorado legislature."  Response, at 4.

This case is distinguishable from *Davis*.  There, plaintiffs were charged with and penalized for an offense under Denver's municipal code that was quite similar, albeit not identical, to a state statute covering the same conduct.  The Colorado legislature had not delegated authority to Denver to enact the ordinance.  By contrast, Laidley was charged under a state statute.  C.R.S. § 42-2-101(1).  See Guilty Plea, Exhibit 1 to Motion to Dismiss.  The Impoundment Ordinance does not prohibit driving without a license; instead, it addresses a separate issue, not covered by the statute, *i.e.*, the handling of a vehicle

---

[6]        Alternatively, the court found the municipal ordinance void because of the conflict in penalties between the ordinance and the statute.  342 P.2d at 679-80.

10

when its operator lacks a valid driver's license.

Looking to the decisions of the Colorado courts, and applying the factors set forth in the *Commerce City* case, I conclude that the impoundment of vehicles in circumstances where a driver is found to be without a valid operator's license is a matter of local concern. It is for Denver, not the State of Colorado, to enact legislation to deal with matters of traffic obstructions, abandoned vehicles, and congestion of its streets.   Accordingly, Denver had authority to enact the Impoundment Ordinance.[7]  *Commerce City*, 40 P.3d at 1279.

C.   Validity of Costs Ordinance

Although the parties do not clearly distinguish between the Impoundment Ordinance and the Costs Ordinance in their filings, Laidley's Complaint may be read to allege that Denver lacked authority to legislate on the consequences of driving without a license, including the potential forfeiture of an impounded vehicle if the required bond is not posted. Complaint, ¶¶ 4, 6.[8]

───────────────

[7]     Even if the impoundment were found to be a matter of mixed state and local concern, Denver was authorized to enact the Impoundment Ordinance so long as it does not conflict with a state statute.  "The test to determine whether a conflict exists is whether the home-rule city's ordinance scheme authorizes what the state legislation forbids, or forbids what the state legislation authorizes." *Commerce City*, 40 P.3d at 1284.  Under this test, there is no conflict between C.R.S. § 42-2-101, the statute under which Laidley was charged, and the Impoundment Ordinance.  The ordinance neither authorizes conduct forbidden by the statute nor forbids any conduct authorized by the statute.

[8]     The first of two paragraphs four in the Complaint states:

The effect of the Seizure/Forfeiture Ordinance is to entitle Denver to seize and forfeit any motor vehicle being operated by a person who does not have a valid driver's license.  The unlicensed driver may avoid forfeiture of his motor vehicle only by rendering over to the City a minimum of some $2,800.00–an amount exceeding two and one-half times the maximum fine amount Denver is permitted to impose under state law (C.R.S. § 31-

Under section 54-813 of Denver's Municipal Code, all persons whose vehicles are impounded must pay certain costs, including an impoundment fee of $120.00 (for vehicles under a certain weight) and a storage charge assessment of $20.00 per day, to redeem their property. § 54-813(a)(1).[9]  In the case of vehicles impounded because the operator lacked a valid driver's license, however, additional costs are imposed if the owner of the vehicle wishes to avoid forfeiture of the vehicle.  Within thirty days of impoundment, the owner must post a $2,500 bond and pay a $75 bond fee, as well as a $100 "impoundment land acquisition fee."  The bond is held for a one-year period; it is forfeited "if such vehicle is operated by an unlicensed driver in Colorado within that time." § 54-813(c).  If the bond is not posted, "the motor vehicle is subject to disposal by the city by auction or otherwise." *Id.*

The bond, bond fee, and land acquisition fee apply only in two of the enumerated circumstances of the Impoundment Ordinance:  where the operator lacks a valid driver's license and where the driver possesses a driver's license from another country but lacks proof that he or she is in the country legally. §§ 54-811(10), (20); 54-813(c).  The Costs Ordinance makes clear that the bond, the bond fee, and the land acquisition fee are not required where the operator of the vehicle had a valid driver's license.  In that case, the vehicle is released upon payment of the towing and impoundment charges. § 54-813(c).  Thus, a licensed driver whose vehicle was impounded because the driver did not have his

---

16-101) and its municipal code (Denver Revised Municipal Code, sec. 1-13-$999.00).

[9]      The Manager of Safety has discretion to waive or adjust any charges imposed by subsection (a). § 54-813(b).

driver's license with him, but who was later able to provide proof of that license, pays impoundment costs of (1) a $120 impoundment fee and (2) $20 per day in storage costs. The unlicensed driver, unable to provide proof of a valid driver's license, pays (1) the $120 impoundment fee, (2) $20 per day in storage costs, (3) a $75 bond fee, (4) a $100 land acquisition fee, and (5) the $2500 bond).[10]   Under these circumstances, I construe the bond and additional fees, which are over and above the standard impoundment and storage costs, to be a penalty imposed by Denver on operators of vehicles who lack a valid driver's license or who have entered this country illegally.

Under *Davis*, the authority to punish driving without a license has been preempted by the State of Colorado.  342 P.2d at 679.  Furthermore, the bond and accompanying fees conflict with the state law penalties imposed for driving without a valid driver's license in violation of C.R.S. § 42-2-101(1).[11]   *See id.* at 679-80 (conflict in penalty between state statute and municipal ordinance was independent reason for holding ordinance invalid).

The *Commerce City* factors support the conclusion that Denver lacks authority to penalize driving without a valid license by imposing the bond and accompanying fees as a condition to the recovery of an impounded vehicle.  There is certainly a need for statewide uniformity of regulation of penalties for driving without a license.  The Costs Ordinance

---

[10]     In addition to the difference in costs imposed on licensed and unlicensed drivers whose vehicles are impounded, the unlicensed driver is given a deadline of thirty days in which to pay the bond and related costs or face forfeiture of his vehicle to the city.  The unlicensed driver has no set deadline for redeeming his vehicle and merely accumulates additional storage fees.

[11]     C.R.S. § 42-2-101(10) states that a violation of § 42-2-101, subsection (1), is guilty of a class 2 misdemeanor traffic offense.  Pursuant to C.R.S. § 42-4-1701(3)(a)(II)(A), the penalties for a class 2 misdemeanor traffic offense include ten days to ninety days imprisonment, fines ranging from $150 to $300, or both.

impacts persons living outside of Denver, should they be stopped and cited for driving without a license within city limits.  Finally, as *Davis* illustrates, the penalization of driving without a license has historically been governed by state law.[12]

Given my construction of section 54-813(c) to impose a penalty for driving without a valid driver's license, *Davis* and *Commerce City* mandate a conclusion that Denver lacked the authority to enact the Costs Ordinance.[13]

3.    Motion for Summary Judgment: Constitutional Claims

Armed with my conclusions that the Impoundment Ordinance is valid but that the Costs Ordinance is not, I now turn to Laidley's constitutional claims.  My resolution of these claims is hampered by the parties' failure to distinguish between the ordinances in their arguments and by Laidley's failure to provide a factual record for events occurring after his vehicle was impounded.

The Complaint alleges that, after being stopped by a Denver police officer and found to be driving without a license, Laidley was informed that his vehicle was "being seized under the Seizure/Forfeiture Ordinance" and that "[t]he police did in fact seize and convert Laidley's automobile at that time."  Complaint, second ¶ 4.  Laidley does not describe in his Complaint what happened next nor, in response to my invitation to provide any factual evidence he wished me to consider on summary judgment, does he provide any such evidence concerning the disposal or recovery of his vehicle.  I am left to guess whether

---

[12]    The last factor, whether the Colorado Constitution commits the matter to state or local regulation, is silent on this issue.

[13]    I must emphasize that the only portion of section 54-813 that is before me is subsection (c).  I make no findings with regard to the validity of the balance of the ordinance.

Laidley paid the bond and accompanying fees to redeem the vehicle, whether a family member or friend paid the amounts for him to recover the vehicle, or whether he was unable to pay the amounts and the vehicle was sold at auction by Denver.[14]

Without such evidence, I may judge the constitutionality only of the impoundment of his vehicle.[15]

    A.    <u>Fourteenth Amendment Claim</u>

Laidley concedes, by not objecting to the evidence of his guilty plea, that he was driving without a license when he was stopped by a Denver police officer.  He also does not challenge that his vehicle was impounded because he did not produce a valid driver's license.  The police officer, acting under the policies of the Denver Police Department, exercised his discretion to impound Laidley's vehicle.  See Denver Police Operations Manual, Section 206.04(1), Exhibit 1 to Reply to Motion to Dismiss ("Vehicles may be towed when it is necessary that they be moved or impounded.  The decision to impound, or to park and lock a vehicle, must be made by the officer at the scene based upon the circumstances of the situation.  Towing and/or impounding vehicles as a punitive action will not be tolerated").  Laidley has provided no evidence to suggest an abuse of discretion in the decision to impound his vehicle under the circumstances of his traffic stop.[16]

---

[14]    Although I recognize that discovery has been stayed in this case pending my ruling on this motion, the missing evidence here is within Laidley's control.

[15]    I note that Laidley challenges only the seizure of his vehicle and does not allege any unconstitutional taking of property in the form of the bond and accompanying fees.

[16]    For instance, Laidley does not inform me of whether there was a passenger in his car with a valid driver's license or whether there was available parking nearby where he could have left his vehicle until a friend or family member with a valid

Laidley's sole ground for his claim that the impoundment of his vehicle violated his substantive due process rights under the Fourteenth Amendment is his argument that the seizure of the vehicle was "without cover of a valid ordinance."  Response, at 5.  Here, I have found the Impoundment Ordinance valid.

To the extent his Fourteenth Amendment claim is based on events occurring after the impoundment of Laidley's vehicle, I lack any record evidence from which to judge whether a constitutional violation occurred.

Accordingly, this claim must be dismissed.

B.    Fourth Amendment Claim

In general, police officers are authorized to impound vehicles "[i]n the interests of public safety and as part of what the Court has called 'community caretaking functions.'" *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976).  An impoundment must be supported by probable cause or be related to a "caretaker" function.[17]  *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996) (citing *Opperman*, 428 U.S. at 370).

In support of his Fourth Amendment claim, Laidley sets forth several reasons why the seizure of his vehicle was unreasonable.  First, Laidley claims his Complaint alleges Denver seized his vehicle for the purpose of disposing of it under the Impoundment Ordinance and not to further any public caretaking function.  The portions of the Complaint that he cites for

driver's license could come to his aid.

[17]    Laidley does not directly address the issue of whether his citation for driving without a valid driver's license provided probable cause for the impoundment of his vehicle.  Instead, he focuses on reasons why he believes the "caretaking" rationale should not apply in this case.  Although I find his guilty plea to driving without a license to be evidence that there was probable cause for the impoundment–in essence Laidley admits he was not legally authorized to drive the vehicle–I will address his arguments.

this proposition do not support his construction.  Complaint, ¶¶ 4, 5.[18]  Furthermore, as I address the parties' arguments under the standards applicable to motions for summary judgment, Laidley has pointed to no record evidence to support his allegation of wrongful intent on the part of Denver when it impounded his vehicle.  The record before me merely reflects that Laidley's vehicle was seized when the police officer discovered that he did not have a valid driver's license; Laidley has conceded that lack.

Laidley's next contention is that the  seizure was unreasonable because, under his interpretation of the Impoundment Ordinance, a vehicle is subject to seizure or forfeiture "irrespective of whether the vehicle is blocking a roadway or whether licensed passengers or others are available to move or remove the vehicle."  Response, at 7.  He relies on *United States v. Duguay*, in which the Seventh Circuit held impoundment of a defendant's car violated the Fourth Amendment where the police officers did not act pursuant to a sufficiently standardized policy and where other persons were present who could have moved the vehicle.  93 F.3d at 353 ("The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets").  In this case, as noted above, Laidley has not provided any evidence of the circumstances of his citation and the impoundment of his vehicle, *i.e.*, whether there was a passenger in his vehicle at the time of the stop who could have driven the vehicle or whether the vehicle was blocking traffic, necessitating removal.  The only evidence I do have is that the Denver Police Operations

---

[18]     There are two paragraphs numbered "4" and two paragraphs numbered "5" in the Complaint.  None of the four paragraphs allege an intent to dispose of impounded motor vehicles.

17

Manual vested the officer who stopped Laidley with discretion to impound the vehicle based upon the circumstances of this case.  Nothing in the record suggests an abuse of that discretion.

My conclusion that the Impoundment Ordinance is valid disposes of Laidley's argument that the impoundment was a wrongful seizure because Denver acted with the purpose of effecting a forfeiture under a void ordinance.

Finally, to the extent Laidley challenges the imposition of the bond and related fees and costs to redeem his vehicle from impoundment, these arguments are not cognizable under the Fourth Amendment.  The seizure of his vehicle was complete at the time of the impoundment, and the reasonableness of that seizure must be determined based on the circumstances surrounding that impoundment.  *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003) ("Once an individual has been meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable.  The [Fourth] [A]mendment then cannot be invoked by the dispossessed owner to regain his property).  "Conditioning the car's release upon payment of towing and storage fees . . . neither continued the initial seizure nor began another." *Id.*

I conclude that Laidley has failed to demonstrate an unconstitutional seizure of his vehicle.  Accordingly, his Fourth Amendment claim must be dismissed.

Accordingly, it is ORDERED:

1.    Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, filed January 31, 2011 (ECF No. 9), is denied to the extent the motion seeks dismissal for lack of subject matter jurisdiction.  The balance of the motion, construed as a motion for summary judgment pursuant to my May 11, 2011 order, is granted to dismiss all

18

claims.

2.      This case is dismissed with prejudice.

3.      Defendant may have its costs.

DATED at Denver, Colorado, on June 29, 2011.

BY THE COURT:

s/ Walker D. Miller
United States District Judge